**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

AUG 3 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

---

YENIFER LETICIA OROZCO AGUILAR;
C.M.R.O.,

               Petitioners,

  v.

TODD BLANCHE, Acting Attorney
General,

               Respondent.

No. 21-1288

Agency Nos.
A208-382-906
A208-382-907

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 10, 2026
Portland, Oregon

Before: GRABER, BERZON, and SUNG, Circuit Judges.
Partial Dissent by Judge Berzon.

    Petitioner Yenifer Leticia Orozco Aguilar and her minor daughter, natives

and citizens of Guatemala, petition for review of a Board of Immigration Appeals

("BIA") decision dismissing their appeal of an immigration judge's ("IJ") denial of

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[1]  Where, as here, "the BIA conducts its own review of the evidence and law . . . our review is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted."  Flores Molina v. Garland, 37 F.4th 626, 632 (9th Cir. 2022) (citation omitted).  We deny the petition.

1.  The agency permissibly ruled that Petitioner did not establish eligibility for asylum, see Lim v. INS, 224 F.3d 929, 934 (9th Cir. 2000) (stating the requirements for asylum), and cannot meet the "more stringent" persecution standard for withholding of removal, Sharma v. Garland, 9 F.4th 1052, 1066 (9th Cir. 2021).

a.  Substantial evidence supports the BIA's determination that Petitioner did not experience past persecution.  See Urias-Orellana v. Bondi, 146 S. Ct. 845, 851 (2026) (stating the standard of review).  Petitioner received frequent threatening phone calls for more than three months before she left Guatemala.  Gang members demanded that Petitioner, who ran a clothing store, pay them money or they would kill her daughter.  On one occasion, gang members repeated that threat to Petitioner while she was going to church.  And in one phone call, a gang member gave an ultimatum that Petitioner must pay within three days or her daughter would be killed.

---

[1] Petitioner's minor daughter is a derivative beneficiary of her asylum claim.

Those threats are frightening and reprehensible, and Petitioner took them seriously. But they do not compel a finding of persecution. "[C]redible death threats alone can constitute persecution," Duran-Rodriguez v. Barr, 918 F.3d 1025, 1028 (9th Cir. 2019) (citation and internal quotation marks omitted), but only in the "small category of cases" in which "the threats are so menacing as to cause significant actual 'suffering or harm,'" Lim, 224 F.3d at 936 (citation omitted). On the sole occasion when Petitioner encountered gang members, they did not attempt to harm her physically. Cf. Sharma, 9 F.4th at 1063–64 (upholding a finding of no past persecution where the petitioner was threatened, detained, and beaten). Petitioner's testimony and country conditions evidence reflect that the gang sometimes carries out similar threats, but the BIA gave greater weight to the fact that the threats here "were not acted upon." And although a petitioner need not "wait for the threat of violence to materialize before seeking" asylum, Corpeno-Romero v. Garland, 120 F.4th 570, 578 (9th Cir. 2024), the record does not compel the finding that this threat would materialize. The three-day ultimatum was given on July 16, 2015, but Petitioner did not leave Guatemala until August 12, 2015, and neither she nor her daughter was harmed.

b. Substantial evidence also supports the BIA's determination that Petitioner did not establish an objectively reasonable fear of future persecution. Petitioner continued to receive threats after she left Guatemala. In the three and a half years

between Petitioner's departure from Guatemala and her hearing before the IJ, her parents and sisters also received hundreds of threats but were not harmed. The gang's attempt to shoot Petitioner's brother, one month after Petitioner left Guatemala, may reflect that the gang's threats were serious.[2] See Marcos v. Gonzales, 410 F.3d 1112, 1119 (9th Cir. 2005) (explaining that threats may support a reasonable fear of future persecution if "the group making the threat has the will or ability to carry it out" (citation omitted)). But the BIA permissibly weighed that incident against the lack of other harm to Petitioner's family and determined that "[t]he severity of the gang's threats is undermined" by the family's ongoing safety. Because of the similarity between the threats against Petitioner and her parents, "substantial evidence supports the BIA's reliance on [Petitioner's] family's continued well-being." Sharma, 9 F.4th at 1066.

As the BIA acknowledged, Petitioner's family "change[d] their residence regularly" and "hired private security." But the BIA determined that Petitioner's family did not "avoid[] persecution solely because they are frequently moving or in hiding." The record does not compel the contrary conclusion. First, substantial evidence supports the BIA's determination that Petitioner's family "spent enough time at home in their hometown that gang members could have harmed them had they so desired." And, aside from the brother's attempted shooting, the record

---

[2] Petitioner's brother left Guatemala shortly after the attempted shooting.

reflects no instances of the security guards' actively protecting the family. Cf. Akosung v. Barr, 970 F.3d 1095, 1105 (9th Cir. 2020) (stating that, for a CAT claim, the absence of past harm would not negate a likelihood of future torture where the petitioner's testimony reflected "that the only reason she evaded physical attacks" was that she went into hiding (emphasis added)).[3]

2. Substantial evidence supports the BIA's denial of Petitioner's application for CAT relief. For the same reasons discussed above, the record does not compel the conclusion that Petitioner is likely to be tortured if she returns to Guatemala. See Tamang v. Holder, 598 F.3d 1083, 1095 (9th Cir. 2010) (stating the requirements for CAT relief).

**PETITION DENIED.**

---

[3] Petitioner argues that the BIA failed to consider her fear of future persecution based on patterns of persecution against Christians, women, and business owners. But Petitioner failed to exhaust that argument before the agency. See Umana-Escobar v. Garland, 69 F.4th 544, 550 (9th Cir. 2023).

*Orozco Aguilar v. Blanche*, No. 21-1288

BERZON, Circuit Judge, dissenting in part:

I concur in the memorandum disposition with regard to the applications for withholding of removal and relief under the Convention Against Torture. I would grant the petition as to the application for asylum and so dissent from the majority's holding to the contrary.

To be eligible for asylum, applicants have to show both a subjective fear of future persecution and that, objectively, there is a ten percent chance that they will be persecuted on the basis of a protected ground in the future. *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987); *Canales-Vargas v. Gonzales*, 441 F.3d 739, 743 (9th Cir. 2006).

I would hold that the Board of Immigration Appeal's ("BIA") holding that the objective prong was not met is not supported by substantial evidence. The nub of the BIA's holding on this point was that Orozco's family, although threatened hundreds of times by the gang (including once by a note pushed under the door of the family home), was not injured. It held that "[t]he severity of the gang's threats is undermined by the fact that [Orozco's family members] have not been harmed." But the record shows that the family's survival was not because the gang did not try to follow through on these threats. Orozco's brother was shot at shortly after she left the country. He survived because his family was paying for private security

1

and the guards were able to protect him. The record also indicates that the family's survival came at a steep price—family members' ability to go out in public was constrained, they had to regularly change phone numbers, and the family moved houses around the country frequently to avoid the threatened violent attacks.

The majority discounts these aspects of the record for two reasons. First, it avers that "substantial evidence supports the BIA's determination that Petitioner's family spent enough time at home in their hometown that gang members could have harmed them had they so desired." Memorandum Disposition at 4 (citation modified). But that evidence is belied by what did happen when the family was home—only private security saved Orozco's brother from harm. The majority discounts this consideration by observing that "aside from the brother's attempted shooting, the record reflects no instances of the security guards' actively protecting the family." *Id.* at 4–5. That the gang did not shoot *again* at family members surrounded by guards is not substantial evidence of what would have happened had the family lived normal lives, residing consistently at home rather than moving about, and going around town without the loss of privacy and freedom of movement that comes with constant accompaniment by security personnel.

Orozco testified to the restricted life she would face if returned to Guatemala. She stated, "I can't be safe because as I said I'm afraid for my daughter's life, and going around with a security group that's not a life. Watching

2

me get out of the car, watching to see if someone's looking at me otherwise someone will hurt me—that's not a life." She described the effect on her family of living under the constant protection of security guards—as she testified she too would have to do, if removed: her sisters "don't go out alone," and her parents "can't live like the family they are. . . . They can't live in peace."

The BIA ignored her concern and made no holding as to whether reliance on intrusive private security forces—like protecting oneself by hiding, *see Akosung v. Barr*, 970 F.3d 1095, 1101–02 (9th Cir. 2020)—supports rather than detracts from the objective prong of the well-founded fear requirement. The BIA did *not* hold, as the majority suggests, that the family remained safe because the gang's hundreds of threats were empty air, rather than because of restrictions on the family's activities and the private security forces it employed.

I am not aware of any case law regarding the impact of restrictions on a family's daily lives and the reliance on security personnel on the analysis of the objective prong of the well-founded fear analysis.

Given this gap, I would remand to the BIA to address the impact of the private security and the resulting restrictions on the family's freedom of movement on the well-founded fear inquiry and therefore respectfully dissent.